Thank you, Your Honors. My name is Randy Sassamon. I'm appearing on behalf of the plaintiffs and the appellants in this case. My goal is to reserve approximately three minutes for rebuttal and I need to start with a caveat that I'm recovering from a punctured eardrum and I can't hear very well out of my left ear and I really can't tell how loudly I'm speaking, so please feel free to regulate me. This is an Arizona standard fire policy. This is item number 22-2 in the record. Beautiful in its simplicity, front and back. Front contains a number of places to fill out information. It contains the insuring clause of the policy. The back contains exclusions, restrictions, conditions, and miscellaneous provisions. In Arizona, if a loss is covered under the insuring clause and it's not excluded by one of these exclusions, the policy is covered or the loss is covered. And that's because of ARS section 20-1503. We regulate fire insurance in Arizona like we regulate auto liability coverage, UM coverage, UIM coverage. We tell carriers what must be in a policy and what you can't do. So it seems to me that based on 20-1503, what you're really suggesting is that in Arizona, unless it does what the standard fire policy does, we construe the policy as if it were a standard fire policy. That is correct, Your Honor. And Metropolitan, you know, brings your attention to 1507, which says you can add things to a fire policy. 1507A says you can add other coverages, other perils. But 1507B says that those additional things, you can include provisions that are inconsistent with the standard fire policy. If such provisions and stipulations are applicable only to such additional coverage or to the additional peril or perils insured against. So in other words, as I understand it, you can add whatever you want to cover under these insurance policies, and you can put limitations as to that coverage, but the fire policy remains the same. That is correct, Your Honor. That's exactly correct. I have a really basic question. And it is, and since you have the policy there, it's under, at the end of Section E of the exclusions, the Earth Movement exclusions, there's a paragraph. However, we pay for direct loss that ensues after Earth Movement if caused by fire. Do you know the paragraph I'm referring to? I don't have the policy in front of me, Your Honor, but I do recall that. I thought that's what you were holding up. I'm looking at my notes. All right. All right. I don't see how anybody briefed that, nor did the interpret that clause, which would appear to provide for the payment of direct loss that ensues after Earth Movement if caused by fire. How does that play in, if at all, in this case? I don't think it applies to anything in this case. I can give you an example from right here in San Francisco back in, I think it was 1989 during the World Series. You had a big earthquake here. Right. And as a result of that earthquake, you had gas lines breaking and fire ensuing as a result of that. So that's the situation where the Earth Movement causes fire. And I think that's what that's referring to. All right. Thank you. I suspected that was the case because nobody had talked about that clause. All right. So the factual context in this case isn't complicated. We had the Wallow Fire that began in May of 2011. It burned my client's property. It burned vegetation. It burned down the detached garage before the fire was contained around July 8th of 2011. And then, of course, we get the monsoon rains in the mountains in Arizona. That's what happens every summer. This wasn't unusual. And because there's a change in the ground now, instead of the rain soaking in and being soaked up by the vegetation that was there, it all comes tumbling down with the earth, the soil that's no longer held in place by this vegetation. Let me ask you a question about that just to be sure. That's your argument, I understand. And that would be your allegation, I would understand. So therefore, on the summary judgment, I would have to give you the benefit of the doubt on that. But if, in fact, I were to suggest quite the opposite, that I can't find any other than your allegations, there's no evidence, would I need to remand and allow the district court to have a trial, if you will, about that? If that becomes a factual issue that Matt brings up, that is exactly correct. I mean, on summary judgment it isn't. But I'm suggesting is, supposing that I said, even if I agreed with you on summary judgment, do I have some obligation to send that back then to see if the insurance company can come up with evidence that would undo your allegations? Because all I've got is a plain allegation now. Well, we, and this came down in kind of a funny way. If you look at the joint scheduling order that we prepared, we really anticipated at that time that we would do a stipulation that for purposes of cross motions for summary judgment, we would. Even for cross motions for summary judgment, that would not eliminate the chance to have a trial about the real facts. That's correct, Your Honor. That's correct. Okay. That was my question. Yeah. And it got time to file the cross motions contemporaneously and we couldn't agree on language. You know, the idea was to do as was done in Larristus, the fire case in Arizona, where the parties agreed for purposes of motion for summary judgment that the fire was a cause of the mold. Well, and he's got to suggest that's the way it is here if he's going to beat you on summary judgment. He's got to say the fire was some cause, maybe not the direct, that's what he's arguing, but he's got to say it's some cause, hasn't he? Because your facts are what he's got to live with. I'm not sure I'm following that, Your Honor. Well, aren't the facts that you allege the facts he has to live with on summary judgment to beat you? Certainly, yes. All right. Thank you. Well, would you, you were procedurally explaining how this came about. How did the, so would you just explain, in your view, how did the district court go wrong? Well, the district court went wrong because he concluded that Arizona does not apply a proximate causation test to the but-for language, I'm sorry, the cause directly by language. And he distinguished the California case, the Howell case, which everybody agrees is factually on point. Actually, our case is stronger because the time difference is less. And in that case, the reigns were said to be unusual and unusually heavy, whereas in our case, this was normal monsoon rains. The judge distinguished that because Arizona does not apply the efficient proximate cause rule. But to me, that begs the question because all efficient proximate causes are a proximate cause. Not all proximate causes are efficient proximate causes. But you can't be, it can't be an efficient proximate cause if it's not a proximate cause. And in Arizona, once we determine that it's a proximate cause and there's coverage under this insuring clause, that we don't look to exclusions that aren't contained in the standard fire policy. I think it means proximate cause, all direct loss by fire or any other peril. And I've told you why I think that. I think it because that's what the Arizona Supreme Court says that all direct loss by means in the Corrie v. Western Casualty case. Sure, that was a windstorm loss. But the court said its proximate causation even turned to two tort cases, the Ottovarus v. Borak case and the McDowell case. Ottovarus is a, the seminal dramshot case in Arizona. The first case to extend proximate causation from the impaired driver back to the person who served the impaired driver. It's all part of the chain of causation. The McDowell case teaches us that a cause need not be a large cause in order to be a proximate cause. So, under your approach, is it fair to say that whenever there had been a fire on a property sometime or nearby, that really, if plaintiff alleged the fire had some role or a proximate cause, you're never going to have a summary judgment? Well, I wouldn't go that far. I mean, obviously there has to be some evidence. And the court would have the burden of proving that. And then the determination for the court really goes back to the old Paul's graph case in terms of how far we carry that as a policy matter, this metaphysical beginnings argument that they make. And at some point in time it's a continuum. At some point in time the court, I think, can look and say, as a matter of law, this was a proximate cause of the loss. There's another place in that continuum where it's a jury question. And then there's yet a third category where the court can look at it and say, as a matter of law, this was not a proximate cause. It's too attenuated. But I don't think you have that third category, certainly, in this case. I think it's in the first category, but there can be argument about that. Fair enough. Thank you. It's my understanding that what you're really arguing is that we should adopt the definitions for this direct and proximate cause in the, if you will, the insurance law and practice by Appleman. That is correct, Your Honor. That's very attractive. And so I look at that, and then on the other hand it seems to me that your opponent is saying, no, Mylar, or Miller, I don't know how you say it, says we've never adopted the efficient proximate cause rule, and that's what the district court did. Correct? That's really the two positions? That's correct. Should we send this to Arizona Supreme Court to tell us what we should do? I mean, they're the ultimate decision maker. Should we send it over there to them? You know, Judge, obviously a court sitting in diversity is obligated to apply the law of the state. And you could do that, but I think there's sufficient evidence in this case of what Arizona law is that you don't need to do that. We have law on the subject. We have the Curry case. Well, it seems to me that what I have to do, if I adopt your idea, is that I have to say, yeah, we don't apply efficient proximate cause rule in Arizona in everything except fire. Oh, no, I'm not asking you to apply the efficient proximate cause rule at all. Okay. I'm just asking you to find that this fire is or at least could be a proximate cause of this loss. And if that's the case, it's covered here. It's not excluded here. So it's covered. But you are entitled to summary judgment as a matter of law? I certainly think so. That's correct. At the very least, it needs to be sent down to resolve that issue. And frankly, we're going to go back down. Resolve? That's what I'm having trouble understanding. To resolve what issue? Whether, as a matter of fact, the but-for test, this loss would not have occurred but-for the wildfire. I think I've established that. They disagree. Well, but your establishment of it, again, is only in your allegations of your complaint. Well, I provided information, again, because of the way this thing came down, and we really didn't get a chance to stipulate to that issue. I had to come up with something on short notice now that, you know, to make my case for these contemporaneous cross motions for summary judgment that we agreed that we would file. I see. And so I got an affidavit from my insured establishing that these rains weren't unusual or unexpected. This home had been there for a long time. This had never happened before the mountainside was denuded. And we attached all sorts of news articles. I think the court can take judicial notice of the fact, when the mountainsides get burned and we get rains, the soil comes tumbling down. I'll reserve the remainder. Thank you. Okay. Good morning, Your Honors. My name is Chris Hanlon. I represent the Appalee Metropolitan. What Apollons are trying to do here is to change the substantive law of the state of Arizona. In other words, they want to change the word direct and conflate it with proximate cause. As the court just recently stated, it's – I call it MALAR – the MALAR court stated, we have never adopted the efficient proximate cause rule. They stated that in no uncertain terms. And what we're doing today is asking you to follow the appellate court's ruling in the MALAR case. The policy provides for a direct loss. We did pay for a direct loss, which was a fire to the garage. As far as the structure is concerned, the dwelling, the direct loss to that was earth movement and water. In other words, a mudslide. And I know the court asked about what could have caused that. We get back to that metaphysical analysis. What we're asking the court to do is focus on what is the direct loss. Under a homeowner's policy in the state of Arizona –  Yes, Your Honor. Because we're in a fire policy here. Yes. We can't get far afield from the regular fire policy. How do you distinguish larestitis? That's the way I say it. I don't know how you say it. I'm just an Idaho Yahoo, so it might be different. But nonetheless, how do you distinguish that case? L-I-R-I-S-I-T-I-S. Because in that case, the insureds had a fire. The home suffered from the fire, but they came and put the fire out, and they had damage. Within one or two months, the insureds noticed mold growth. Then they made a claim for damage. The insurance company denied the coverage under the policy, which excludes loss relating directly or indirectly caused from mold. But the court said, you cannot exclude this because this was caused by the fire. Seems to me that in that situation, if that is direct, and that policy was in direct cause, if that is direct, I'm having a tough time understanding why this couldn't be direct. Okay. And I'm glad you asked that, Your Honor. I call it larestitis, and I don't know if I'm pronouncing it right either. But in any event, as you pointed out, that was a mold loss. But mold was determined to be the loss itself, not a cause of loss. And I think where this case... Just a minute. The court came back and said, the fire caused the mold, and therefore, you're going to get money for the mold, even though in general, you couldn't get the money for the mold. And therefore said, there was a direct cause. I agree, but what I'm saying here is the court, what they recognized was that the mold was a loss itself. The loss itself was mold. That's what the case dealt with. This case involved exclusionary language involving mold. And I think what's critical here is, in the larestitis case, neither the appellant, the appellee, or the court raised an issue regarding this exclusionary language as not comporting with the Arizona State fire policy. Well, that was a bad attorney. Not a bad judge, definitely. It should have been more like you, the one who raised it. Is that the only reason that doesn't apply? This segues to my next point. But to the contrary, the insurance company was American Family. The court found that had they properly drafted the exclusion, it would have been upheld. And one of the points they stated was, American Family, in this policy, stated other causes of loss when they should have written other losses not covered. We mimicked that, or I should say, mirrored it in our case, or in our policy. Metropolitan States, clearly and unequivocally, losses we do not cover. So under larestitis, they were allowing for exclusionary language. The problem was it was unartfully drawn by American Family in this case, because they're saying other causes of loss when the court explicitly states they should have written other losses not covered. It does not hold in any way, shape, or form that the parties cannot contract out of the efficient proximate cause doctrine. I think actually it stands for what we're arguing here, because it allows this exclusionary language to stand. The court never said exclusionary language is not available in a fire loss. Quite to the contrary, they said American Family. I don't think it said that, but I do think it said, based on the facts therein, and based on the holding thereto, you can put in all you want about the language of the exclusion or not the language. There is, dead on, an Arizona case allowing that loss, which we can call direct, proximate, whatever, gets coverage. I agree. It allowed it, but it allowed it because of the way the policy was written or poorly drafted in this case. Another time, a good lawyer who drafts the language better, that's what we're saying. Unfortunately, I don't draft these, but at least I wish I did. There are plenty of times when I wish I did draft these. In getting to the New York State standard fire policy, it does state under other perils or subjects, any other peril to be insured or subject of insurance to be covered in this policy shall be by endorsement in writing hereon or added thereto. Council brought up ARS 28-1507. That's our Arizona statute, which does allow us to contain or to place in the policy exclusionary language. But exclusionary language, as I understand it, under 1507, does not allow you to do that as to the new causes you put into the policy or new items that might be caused by the fire. You can do whatever you want, but as to the fire itself, you cannot do it, as I understand the language. Well, then we're going back to approximate versus direct cause analysis. And with a direct cause of this loss, and as I stated, I don't think anybody's disputing, was earth movement and it was water, obviously, which created a mudslide. It was not fire. Fire was not a direct loss in this situation. It was not a direct cause. The courts, pursuant to these decisions, have allowed this kind of exclusionary language to stand. The concept of approximate cause existed even at the time the New York State fire policy was put together back in 1943. They decided to use the language direct cause, not approximate cause. Arizona does not have any case law, and plaintiff has not cited any case law, where proximate cause is to be used in the analysis of exclusionary language, such as the leading cause, clause that is in place in this situation. Other than, if I look at what Arizona generally quotes, they quote Ms. John and Justice, and it seems to me reading that, there's no way I can't suggest this is direct cause. I mean, they say, where apparel specifically insured against sets other causes in motion, which in an unbroken sequence and connection between the act and final loss produces the result for which recovery is sought, the insured apparel is regarded as the proximate cause of the entire loss. And I agree, and that's what the court had to go to was a proximate cause analysis, because the policy was not drafted properly in the Lercetis case. In other words, as stated before, to express the intention to exclude all mold, the company could have chosen other excluded losses or other losses not covered as the title of paragraph six. They didn't do that, so then they have to segue into an analysis under Appelman with regard to proximate cause and not direct cause. But the language doesn't stop there, Counselor. It says, it is not necessarily the last act in a change of events, which is therefore regarded as the cause, but the efficient and predominant cause which sets into motion the chain of events producing the loss. So I'm reading the insurance law and practice journal. I'm trying to say what they think direct cause is, and then I read Millar, which you've suggested, and then I read Appelman, and I'm still trying to say, do you lose? And if you don't lose, should I send it over to the Supreme Court and see what they'd say? It's our position that the law is clear in this situation with regard to the fact that Arizona has not adopted the efficient proximate cause doctrine, and it should not be applied in this direct cause. As the fire, like the garage burned, the fire caused it. That would be the direct loss. Efficient proximate cause would be that remote cause in time, such as Plaintiff's Counsel mentioned, maybe the earth movement, the mud slide, the water slide, anything of that sort. Whatever it is, the very last act, that's it. It's the house didn't fall in immediately, and then did fall in and damaged everything in the house. Would that be a direct cause? I think you're getting into a situation where it's similar to the structure. The fire did ultimately cause the burning of the house. There was actual burning to the house. In this situation, there was no burning of the house, and I think that's a clear distinction. So you're agreeing then that in that instance, we would have a direct cause, because the roof falling in would be enough. Once again, I think, Your Honor, we're going to these metaphysical grounds. All I'm trying to do is understand your argument, because that's not very far from the fire burns all of the property around the house, and thereafter the rain comes and it falls on the house and causes all the damage. That's not very far from the roof caving in. That's what I couldn't find. That's why I kept making these examples to myself, trying to come up with them. And where we're going with that is, even if the direct cause is to be interpreted as somehow meaning proximate cause or efficient cause, it's limited by the exclusion that's in the policy in this case, which was upheld by the district court. The district court is not binding on me. I understand that. I appreciate what the district court said, but that's not it. I'm trying to make the same decision the poor court did, and that's why I'm asking you these questions. No, I understand that, Your Honor. And it's our position that the efficient proximate cause doctrine is not to be considered because of the limiting language in this policy. It was specifically set up, in other words, to give the plaintiffs or the appellants compensation for this is to give them a benefit they did not bargain for. They didn't bargain for, and we didn't agree to cover damage due to earth movement, due to water, due to mudslide. That's extra insurance. If the earth had just come down on the house because of the rain, we wouldn't be here. But the earth didn't come down on the house because of the rain. His allegations suggest the earth came down on the house because the fire damaged it and it made it come down. I agree, and I understand where his allegation is coming from, but that goes to approximate cause analysis, and I hate to be circular here, but we're going back to Don't worry about being circular, because I think my questions are. I'm not going to understand your argument, and I'm having a tough time separating. And then I say why don't I send that to the Supreme Court? The Supreme Court of Arizona? It's our position that the issues that are in front of you are sufficient to be decided by all of you. Obviously, you have the right to do that should you so choose. It's our position that the law is quite clear in this claim with regard to how this policy was written and the exclusion that it stands for. There's been no case law cited by plaintiff that does stand for the proposition that an exclusionary clause such as this is unenforceable in Arizona or in any other state unless it's contradicted, obviously, by statute. We don't have a statute that stands for the proposition that the efficient proximate cause doctrine exists. California does. We do not. That's some of the cases they've cited. Obviously, insurers want to know what it is they're actually bargaining for. They want the plaintiff to know what they're bargaining for. Okay, so we're sitting in San Francisco in the middle of an area that was devastated in 1906 by a fire that resulted from an earthquake. So in that situation, you would say that the earthquake didn't cause the damage. The fire did. I wish I was as up on my history as I was. I know there was a fire and an earthquake. The earthquake came first. Okay. In Chicago, I think it was the cowering. We're out of this because the earthquake caused the fire, and therefore, we're out because we only insure earthquakes. Okay. And if there's an exclusionary clause such as this, it would be upheld. I mean, it's obviously you can get earthquake insurance. I don't know if it existed back in 1906 or not, but that was something that was not bargained for. That's the position we're taking in this case. Thank you. Thank you, Your Honor. Good argument. Thank you very much. Counselor, do you have any time? I don't remember. Yeah. I believe that I did, Your Honor. Give him 30 seconds anyway. He deserves at least what I gave the last. One minute. Thank you. Three points. Larista's case. You're right on point. Fire does not cause mold. I think you can take judicial notice of that. Mold is caused by water, by dampness. With respect to the Appelman situation, interestingly, they cite at pages 19 and 20 a quote from Appelman. That quote includes a footnote, number 73. This is those cases in which proximate cause or direct loss means proximate cause as used in the law of negligence. Footnote 73. If you look to Addendum 2 to Matt's brief at page 59, footnote 73 cites Arizona case as an example of those jurisdictions that apply it as proximate causation. Cites the Curry case and then notes that it's windstorm. The last argument about not granting some windfall to my clients, these developments aren't new. Curry was 1987. Larista's 2002. Appelman quotes are from 1970. One of the cases I cited is 1907. That's not a matter of a windfall to my clients. That's a matter of underwriting. And we didn't get into the facts, but I suggest that their underwriters either considered this peril under this language, because they know it's required language, or they need to get new underwriters. Thank you. Thank you. All right. We appreciate your great arguments. Case 12-17575, Stankova v. Metropolitan. The next case.
judges: Gleason, Schroeder, Smith